# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>EDWARD SUSUMO AZANO HESTER (5),<br><br>                              Defendant. | Case No.: 14cr388-MMA-5<br><br>**REDACTED**<br><br>**ORDER DENYING DEFENDANT HESTER'S MOTION FOR A NEW TRIAL BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL**<br><br>[SEALED Doc. No. 663] |

Defendant Edward Susumo Azano Hester ("Hester") moves for a new trial based on the ineffective assistance of counsel. *See* SEALED Doc. No. 663. The parties appeared before the Court on June 2, 2017 for a hearing on the motion. *See* Doc. No. 721. Subsequent to the hearing, the Court took the motion under submission for further deliberation. Having considered the parties' briefs, the pertinent portions of the record, and the oral arguments of counsel, the Court **DENIES** Hester's motion.

## PROCEDURAL BACKGROUND

Hester is charged in a 39-count Third Superseding Indictment with one count of conspiracy to violate campaign finance laws (Count 1), one count of donation and contribution by a foreign national (Count 3), and 12 counts of falsification of records related to campaign finance (Counts 6-17). *See* Doc. No. 336. Hester was tried on all counts during the course of a six-week trial, July 26, 2016 through September 1, 2016. Prior to trial, Hester moved *in limine* for a severance of his trial from that of his co-Defendants, citing a serious personal health condition. *See* Doc. No. 341. After holding a two-day hearing, the Court denied Hester's motion. *See* Doc. No. 358. Hester renewed his motion to sever on the second day of trial, citing the retention of new counsel and the need for additional time to prepare his defense. *See Reporter's Transcript ("RT")* (SEALED Side Bar Conference), Doc. No. 653-5 at 5.[2] The Court denied the renewed motion, and trial proceeded as to all Defendants. *Id*. at 6.

On September 9, 2016, a jury found Hester guilty of the conspiracy and donation and contribution charges (Counts 1 and 3). *See* Doc. No. 480. With respect to the falsification charges, the jury acquitted Hester on Counts 6, 8, 9, 10, 11, and 12. *Id.* The jury deadlocked regarding Counts 7, 13, 14, 15, 16, and 17, and the Court declared a mistrial as to those counts. *See* Doc. No. 479.

On December 5, 2016, Hester retained new counsel of record. *See* Doc. No. 528. Hester now moves for a new trial based on the ineffective assistance of his former attorneys, Donald DeGabrielle and John Kinchen.[3] *See* SEALED Doc. No. 663. The government filed a response in opposition to the motion, to which Hester replied. *See* Doc. No. 690; SEALED Doc. No. 707.

---

[2] Citations to electronically-filed documents in the record refer to the pagination assigned by the CM/ECF system.

[3] Hester also moved for a judgment of acquittal as to Counts 1, 3, 7, and 13-17, or in the alternative, a new trial, based on sufficiency of the evidence. *See* Doc. No. 653. The Court denied Hester's motion, as set forth in a separate written ruling. *See* Doc. No. 735.

## RELEVANT FACTS

A grand jury indicted Hester on March 4, 2016. *See* Doc. No. 252. A member of the local defense bar and his associate represented Hester at arraignment and an initial status conference before this Court. *See* Doc. Nos. 257, 263. Attorney Donald DeGabrielle of Chaffe McCall LLP in Houston, Texas, first appeared on Hester's behalf at a status hearing held on March 22, 2016. *See* Doc. No. 269. On March 25, 2016, the Court approved DeGabrielle's pro hac vice application to represent Hester, along with a pro hac vice application submitted by attorney Michael Wynne of McDermott Will & Emery LLP, in Houston, Texas, to represent Hester's father and co-Defendant Jose Susumo Azano Matsura ("Azano"). *See* Doc. Nos. 271, 272. DeGabrielle designated San Diego attorney Richard Norton of Norton Moore and Adams LLP, as associate local counsel for Hester. *Id.*; *see also* SDCivLR 83.3.c.4, CrimLR 1.1.e.21. Norton is primarily a business and bankruptcy attorney who has represented Azano in connection with Azano's business ventures. *See* Norton Decl. ¶ 3.

On May 9, 2016, DeGabrielle and Wynne jointly filed a series of motions on behalf of their clients seeking various forms of relief. *See* Doc. Nos. 293, 295, 296, 299. Approximately five weeks later, on June 20, 2016, Wynne and DeGabrielle jointly filed pretrial motions *in limine* on behalf of Azano and Hester.[4] *See* Doc. No. 319.

According to Norton, DeGabrielle "was told that there were concerns about his ███████████" approximately one "month before trial commenced." Norton Decl. ¶ 6. This concern caused Norton to meet with local criminal defense attorneys in an attempt to retain alternative representation for Hester prior to trial. *Id.* For example, in late June, Norton approached San Diego attorney Earl Pott of Klinedinst PC about representing Hester at trial. *See* Pott Decl. ¶ 3. On July 11, 2016, after some consideration, including discovery review, Pott declined to undertake the representation

---

[4] The filing indicated that Wynne was now associated with the firm of Hughes Arrell Kinchen, LLP, in Houston, Texas, which Wynne confirmed in a Notice of Change of Address filed on June 28, 2016. *See* Doc. No. 329.

based on the upcoming trial date and the complexity of the case. *See id.* ¶¶ 3-5.

In the meantime, on July 20, 2016, DeGabrielle filed a motion to sever Hester's trial based on Hester's "severe medical issues" and possible need for surgery. Doc. No. 341 at 2. In support of the motion, Hester contended that due to his "serious health condition since June 23, 2016," he was "unable to meet with counsel to discuss the ongoing discovery provided by the Government consisting of over one thousand pages." *Id.* DeGabrielle appeared before the Court on Thursday, July 21, 2016, at the pretrial motions *in limine* hearing. *See* Doc. No. 329. The Court held a further hearing on Friday, July 22, 2016, in order to hear argument and receive evidence regarding Hester's motion to sever. *See* Doc. No. 351. Norton observed the proceedings; in his estimation, DeGabrielle perform poorly. *See* Norton Decl. ¶ 11. Earl Pott was approached that day regarding his willingness to represent Hester. *See* Pott Decl. ¶ 6. He once again declined. *Id.* According to Norton, Wynne recommended that his law partner, John Kinchen, replace DeGabrielle, based on DeGabrielle's ostensibly poor performance at the hearing. *See* Norton Decl. ¶ 13. Norton was informed on Sunday, July 24, 2016, that Kinchen had agreed to represent Hester at trial. *Id.*

DeGabrielle appeared before the Court again on Monday, July 25, 2016, for a continued evidentiary hearing regarding Hester's severance motion. Kinchen was not present, and had not yet entered an appearance on Hester's behalf. *See* Doc. No. 358. Norton entered a formal appearance, sat at counsel table, and once again observed DeGabrielle perform poorly. *See* Norton Decl. ¶ 16. During the hearing, Wynne attempted to cross-examine a key witness in place of DeGabrielle, but the Court disallowed it due to the conflict of interest created by Wynne's representation of Azano. *See RT*, Doc. No. 359 at 47. Norton completed the witness examination. *Id.* at 48-59.

At 8:41 a.m. on Tuesday, July 26, 2016, the first day of trial, counsel for the parties provided their appearances for the record. *See RT*, Doc. No. 653-3 at 4. Norton appeared on behalf of Hester, indicated that DeGabrielle was "running a little late," and stated he did not believe it was necessary to wait for DeGabrielle to arrive. *Id.* Norton advised the

Court that he and DeGabrielle would sit at counsel table during trial. *See id.* at 5. Moments later, Wynne corrected Norton, and advised the Court that DeGabrielle was "being replaced" by John Kinchen. *Id.* at 6. Kinchen arrived in San Diego later that morning, and entered a general appearance on behalf of Hester just prior to the beginning of jury selection. *See* LaBella Decl. ¶ 16. Kinchen submitted a pro hac vice application to represent Hester, designating Norton as associate local counsel. *See* Doc. No. 356.

The next morning, prior to the opening arguments of counsel, Kinchen requested a side bar conference with counsel and the Court. *See RT*, Doc. No. 653-5 at 4. Kinchen advised the Court regarding DeGabrielle's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 5. According to Kinchen, it appeared during the time leading up to trial that DeGabrielle had been suffering from ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and therefore DeGabrielle and Hester had not been able to adequately prepare for trial. *Id.* at 5-6. Kinchen did not request a continuance on behalf of his client, but he did renew Hester's motion for a severance based on his, Hester, and DeGabrielle's collective inability to adequately prepare for trial. *Id.* at 6. Kinchen advised the Court that he had "stepped into the facts" the previous Friday, due to the concerns regarding DeGabrielle's fitness to represent Hester. *Id.* The government opposed Hester's request for a severance, and the Court denied the renewed motion. *Id.* at 7.

Prior to the conclusion of the side bar conference, the government pointed out that Hester had signed a conflict waiver, which made it apparent that he had voluntarily elected to go forward with Kinchen as trial counsel prior to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 9. The pertinent section of the waiver provides:

> SUSU [aka Hester] has requested representation by the Firm (specifically, by John Kinchen) on the eve of trial (July 24, 2016). SUSU acknowledges that he has been advised of the risks involved in terminating his prior counsel (Donald DeGabrielle) on the eve of trial and hiring new counsel (John Kinchen) who has very limited time to review discovery and prepare for trial. SUSU understands those risks, and, nonetheless, desires and requests that John Kinchen represent him at trial. The parties further acknowledge that

SUSU's prior counsel (Mr. DeGabrielle) was unable to review discovery with SUSU because of SUSU's medical condition.

Norton Decl., Ex. 1 ¶ 9. Hester and Azano signed the agreement, waiving "any actual or potential conflict of interest" arising out of Wynne and Kinchen's firm representing them both at trial. *Id*. ¶ 4.

DeGabrielle did not make any further appearances before this Court. He did not sign a written substitution of counsel, nor did he move to withdraw as counsel of record for Hester.[5] Kinchen and Norton represented Hester at trial. Hester filed a Notice of Substitution of Counsel on December 5, 2016, relieving Kinchen and Norton as counsel of record. *See* Doc. No. 528.

## **LEGAL STANDARD**

Pursuant to Federal Rule of Criminal Procedure 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 "does not define 'interest[] of justice' and the courts have had little success in trying to generalize its meaning." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). It is well-settled, however, that a district court's power to grant a motion for new trial is "much broader than its power to grant a motion for judgment of acquittal." *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir.

---

[5] Pursuant to this District's Local Rules:

> When an attorney of record for any person ceases to act for a party, such party must appear in person or appoint another attorney by a written substitution of attorney signed by the party, the attorney ceasing to act, and the newly appointed attorney, or by a written designation filed in the case and served upon the attorney ceasing to act, unless attorney is deceased, in which event the designation of a new attorney will so state. Until such substitution is approved by the court, the authority of the attorney of record will continue for all proper purposes.

SDCivLR 83.3.f.2. An attorney may also move to withdraw as counsel of record, although a proper substitution of counsel generally renders such a motion unnecessary. *See* SDCivLR 83.3.f.3. Despite DeGabrielle's failure to file a Notice of Substitution, the Clerk of Court administratively terminated DeGabrielle in the CM/ECF system as counsel of record after Kinchen appeared on behalf of Hester.

1992). If the court determines "that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination to another jury," *id.* at 1211-12, irrespective of "the abstract sufficiency of the evidence to sustain the verdict." *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir.1980)).

## DISCUSSION

Hester moves for a new trial based on the ineffective assistance of counsel. The claim is two-pronged. First, Hester argues that the totality of the circumstances surrounding Donald DeGabrielle's pretrial performance, failure to appear on the first day of trial, and failure to assist his successor, John Kinchen, combined with Kinchen's inability to adequately prepare for trial, resulted in a violation of his Sixth Amendment right to the effective assistance of counsel. On this basis, Hester contends that he is entitled to a presumption of prejudice and a new trial. In the alternative, Hester argues that Kinchen provided ineffective assistance during trial, resulting in prejudice and requiring a new trial.

### 1. Relevant Law

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. "The right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To prevail on an ineffective assistance of counsel claim, a defendant must show (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. "[T]here are two ways of meeting the *Strickland* prejudice requirement. A defendant must demonstrate either that the error at issue was prejudicial or that it belongs to the narrow class of attorney errors that are tantamount to a denial of counsel, for which an individualized showing of prejudice is unnecessary." *Weaver v. Massachusetts*, No. 16-240, slip op. at 3 (U.S. June 22, 2017) (Alito, J., concurring).

Generally, ineffective assistance of counsel claims are more properly reviewed in a collateral, post-judgment habeas corpus proceeding. *United States v. Daly*, 974 F.2d 1215, 1218 (9th Cir. 1992). The Ninth Circuit has explained that "[c]hallenge by way of a habeas proceeding is preferable because it permits the defendant to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted." *United States v. Laughlin*, 933 F.2d 786, 788-89 (9th Cir. 1991) (quoting *United States v. Pope*, 841 F.2d 954, 958 (9th Cir. 1988). There are two exceptions to this general rule: "(1) when the record . . . is sufficiently developed to permit review and determination of the issue, or (2) when the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." *United States v. Daychild*, 357 F.3d 1082, 1095 (9th Cir. 2004) (quoting *United States v. Ross*, 206 F.3d 896, 900 (9th Cir. 2000)).

"[W]hen a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding." *United States v. Steele*, 733 F.3d 894, 897 (9th Cir. 2013). Under those circumstances, the district court should apply the standards set forth in *Strickland*. *See, e.g., United States v. Logan*, 861 F.2d 859, 864 (5th Cir. 1988) (recognizing that some courts have applied a more lenient standard in deciding a new trial motion, but declining to do so based upon the Supreme Court's comment that the "principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial.") (quoting *Strickland*, 466 U.S. at 697)).

### 2. Analysis

As an initial matter, the government argues that the Court should decline to consider Hester's ineffective assistance of counsel claim at this stage of the proceedings, "[g]iven the absence of a record" upon which to conduct a complete analysis. Doc. No. 690 at 23. Hester maintains that the record is sufficiently developed to permit full

consideration of his claim on the merits. *See* SEALED Doc. No. 707 at 5 n.2.[6] The Court has reviewed the record, and finds it sufficient to consider the merits of the first prong of Hester's claim.[7]

Hester argues that Donald DeGabrielle's ███████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████ on the evening of July 26, the first day of trial," his failure to appear at trial, and his failure to assist new counsel in any manner, who proceeded to trial unprepared, together constitute *per se* ineffective assistance of counsel under *United States v. Cronic*, 466 U.S. 648 (1984). *See* SEALED Doc. No. 663 at 39.

As noted above, a defendant ordinarily must make an individualized showing of prejudice in order to prevail on an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 687. A defendant need not establish prejudice – because a court will presume it – when there has been an "actual or constructive denial of the assistance of counsel altogether." *Id*. at 692. In *United States v. Cronic*, *supra*, decided the same day as *Strickland*, the Supreme Court "recognized a narrow exception to *Strickland*'s holding that a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defense." *Florida v. Nixon*, 543 U.S. 175, 190 (2004) (discussing *Cronic*). The Supreme Court held that a Sixth Amendment violation may be found "without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial," *Bell v. Cone*, 535 U.S. 685, 695 (2002), when "circumstances [exist] that are so

---

[6] Citations to conventionally-filed sealed documents in the record refer to the pagination assigned by the document's author.

[7] Although Hester did not specifically request an evidentiary hearing, the Court notes that motions for new trial "are ordinarily decided solely upon affidavits." *United States v. Colacurcio*, 499 F.2d 1401, 1406 n.7 (9th Cir. 1974). Moreover, an evidentiary hearing is not required "where there [is] nothing to be gained by such a hearing." *United States v. Scott*, 521 F.2d 1188, 1196 (9th Cir. 1975).

likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," *Cronic*, *supra*, at 658.

Three circumstances justify a presumption of prejudice: (1) "the complete denial of counsel" at a "critical stage" of the proceedings; (2) situations where counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing"; and (3) when surrounding circumstances are such that, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id.* at 659-60. Under these three scenarios, "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence," resulting in a structural error in the proceedings. *Rose v. Clark*, 478 U.S. 570, 577-78 (1986). The Ninth Circuit has cautioned that the *Cronic* presumption of prejudice is applied "very sparingly." *Toomey v. Bunnell*, 898 F.2d 741, 744 n.2 (9th Cir. 1990).

Neither the first nor second scenarios set forth in *Cronic* apply in this case.[8] Under the first scenario, Hester was never completely denied counsel at a critical stage of the proceedings. It is undisputed that DeGabrielle did not appear in court on the first day of trial, and therefore was absent for jury selection. Jury selection proceedings, including voir dire, constitute a critical stage of the trial. *See, e. g., Gomez v. United States*, 490 U.S. 858, 873 (1989); s*ee also United States v. Keen*, 96 F.3d 425, 430 n.6 (9th Cir. 1996) (noting that impanelment of the jury is a critical stage). The Supreme Court "has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Cronic*, 466 U.S. at 659 n.25. However, at no time was Hester left unrepresented. At the outset of the proceedings, Richard Norton was present as counsel

---

[8] The Court acknowledges that Hester does not argue error under the first and second scenarios. Due to the atypical facts of this case and for the benefit of any future review, the Court finds it prudent to determine whether prejudice should be presumed based on any of the grounds identified in *Cronic*.

of record for Hester.  *See* Norton Decl. ¶ 19.  Norton sat at counsel table the morning of the first day of trial, and introduced Hester to the prospective jurors.  *See id*.

Despite Norton's presence, DeGabrielle's absence might have constituted a constructive denial of counsel if Norton was neither "qualified" nor "equipped" to represent Hester.  SEALED Doc. No. 663 at 43 n.26.  The Supreme Court has admonished that "nominal representation at trial . . . does not suffice to render the proceedings constitutionally adequate; a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all." *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  In light of Norton's status as local counsel and his lack of criminal trial experience, Norton's solo presence during a critical stage of the proceedings may have been insufficient under the Sixth Amendment.[9]  *See, e.g.*, *United States v. Leonti*, 326 F.3d 1111, 1115 (9th Cir. 2003) (finding a colorable ineffective assistance claim during critical stage of cooperation with government when only local counsel was present to represent the defendant).  Nevertheless, Norton did not remain unaccompanied for long, and the Court spent the majority of that time tending to pre-trial administrative matters.  *See, e.g., United States v. Bordallo*, 857 F.2d 519, 522 (9th Cir. 1988) (pre-trial ministerial acts are not a critical stage).  Kinchen, an experienced criminal trial attorney, joined Norton just prior to the commencement of jury selection, and thus participated in the critical phase of that morning's proceedings, including attorney voir dire.  *See RT*, Doc. No. 371 at 39.  Thus, despite DeGabrielle's absence, Hester did not suffer a complete denial of counsel at a critical stage of the proceedings.

The second *Cronic* scenario is also inapplicable.  Hester's attorneys never wholly failed to meaningfully contest the government's case.  *See Cronic*, 466 U.S. at 656.

---

[9] Although this District's Local Rules provide that designated local counsel may have "the authority to act as attorney of record for all purposes," this does not impart the actually ability to do so.  SDCivLR 83.3.c.5.  "That a person who happens to be a lawyer is present at trial alongside the accused . . . is not enough to satisfy the constitutional command. . . .  An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Strickland*, 466 U.S. at 685.

1 ███████████████████████████ DeGabrielle represented Hester during the pretrial
2 motions *in limine* and severance hearings. Even assuming DeGabrielle performed
3 deficiently during some or all of those events, the record reflects that he prepared for and
4 participated in the proceedings. *Bell*, 535 U.S. at 696-97 ("When we spoke in *Cronic* of
5 the possibility of presuming prejudice based on an attorney's failure to test the
6 prosecutor's case, we indicated that the attorney's failure must be *complete*.") (emphasis
7 added); *see also* LaBella Decl. ¶ 13. When DeGabrielle declined to question a key
8 witness at the July 25, 2016 evidentiary hearing, Norton did so in his place. *See RT*, Doc.
9 No. 359 at 48. Once Kinchen appeared, he actively defended Hester throughout trial.
10 Kinchen made opening and closing statements, cross-examined government witnesses,
11 and argued trial motions. Hester was never without "counsel acting in the role of an
12 advocate." *Cronic*, 466 U.S. at 656 (quoting *Anders v. California*, 386 U.S. 738, 743
13 (1967)).

As noted above, the Supreme Court in *Cronic* set forth a third scenario of presumed prejudice, "when although counsel is available to assist the accused during trial, the likelihood that any lawyer, *even a fully competent one*, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 U.S. at 659-660 (emphasis added). The inquiry is "not whether counsel in those circumstances will perform less well than he otherwise would, but whether the circumstances are likely to result in such poor performance that an inquiry into its effects would not be worth the time." *Wright v. Van Patten*, 552 U.S. 120, 125 (2008).

Hester's claim falls under this third scenario. Hester asserts that "the fact that he was obligated to find new trial counsel mere days before trial because of Mr. DeGabrielle's ██████████████████████████████████" resulted in precisely the type of untenable situation contemplated by the Supreme Court in *Cronic*. SEALED Doc. No. 663 at 40. Hester argues that the totality of the circumstances surrounding DeGabrielle's ████████████████████████████████ failure to appear, and "sudden departure,"

created a situation in which no lawyer, even a skilled one such as John Kinchen, could provide him effective assistance of counsel during a six-week trial with less than three days to prepare. *Id.* at 39. Hester's counsel expressed this sentiment during oral argument, when he wryly remarked, "I don't care if you're Clarence Darrow, you can't get ready for a trial like this in three days. You just can't do it." *RT* [SEALED] at 35.

Indeed, there are circumstances in which late designation of trial counsel, along with other factors, may give rise to a presumption of prejudice. The Supreme Court has explained that "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not, the defendant need not show that the proceedings were affected." *Bell*, 535 U.S. at 696 (citing *Cronic*, *supra*, at 659-662). For example, in the seminal case of *Powell v. Alabama*, 287 U.S. 45 (1932), the Supreme Court held that the defendants were deprived of effective assistance of counsel where they were assisted by an out-of-state lawyer, appointed on the day of the trial, who did not have an opportunity to prepare the case or familiarize himself with local procedure. The Supreme Court has clarified since its holding in *Powell*, however, that a belated appointment or substitution of counsel does not give rise to a presumption of prejudice unless the defendant can demonstrate that the totality of the surrounding circumstances created a situation "inherently inconsistent with a reasonably effective defense." *Cronic*, 466 U.S. at 666 n.40.

The government argues that because Hester voluntarily replaced counsel on the eve of trial, he has forfeited any complaint regarding DeGabrielle's sudden departure and Kinchen's lack of preparation. Otherwise, as government counsel noted during oral argument, a defendant could "unilaterally decide to retain a lawyer, have that lawyer flown in from another state, appear at trial, represent him ably through the course of the trial, get convicted, come back and then tell the Court there was structural error." *RT* [SEALED] at 43. Hester responds that replacing DeGabrielle was not a circumstance of his own design, and contends that his ability to do so successfully at the veritable last-minute should not be counted as a demerit against him.

While the government's argument is well-taken, particularly given the unusual series of pre-trial events in this case, it implicates Hester's right to retain counsel of his choice rather than his right to effective counsel. Certainly, Hester's right to retain counsel of his choosing "is not absolute." *Terry v. Enomoto*, 723 F.2d 697, 700 (9th Cir. 1984). The right is qualified in several respects. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006). As relevant here, "[a]n accused's right to select his own counsel cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice." *Releford v. United States*, 288 F.2d 298, 301 (9th Cir. 1961). Under this standard, if the Court had refused to permit an arbitrary late substitution of counsel in order to avoid the disruption of a painstakingly scheduled six-week trial involving multiple defendants, a dozen attorneys, and more than fifty witnesses, Hester would have been hard pressed to show structural error as a result of being denied representation by his preferred attorney.

But Hester does not claim a violation of his Sixth Amendment right to counsel of his choice. And while the government disputes the need for new counsel based on DeGabrielle's pretrial performance, DeGabrielle simply did not appear on the first day of trial. By the second day of trial, it is not disputed that for whatever reason, DeGabrielle ███████████████████████████████████████. Hester had a right to effective representation regardless of which attorney ultimately appeared in court.

In light of these events, Hester's decision to retain Kinchen's services less than three days before trial is not the true quarrel. "To argue otherwise is to confuse the right to counsel of choice – which is the right to a particular lawyer regardless of comparative effectiveness – with the right to effective counsel – which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed." *Gonzalez-Lopez*, 548 U.S. at 148. The Court must presume prejudice if the surrounding circumstances created a situation that was completely incompatible with Hester receiving an effective defense. *See Cronic*, 466 U.S. at 659. In other words, the Court must determine whether its denial of Hester's renewed motion to sever was "tantamount to the denial of [effective]

counsel." *United States v. Rodgers*, 755 F.2d 533, 540 (7th Cir. 1985).

A district court does not abuse its discretion in denying a motion to sever "unless the defendant proves that the joint trial of the charges was manifestly prejudicial." *United States v. Smith*, 795 F.2d 841, 850 (9th Cir. 1986). In other words, "[t]he prejudice must have been of such magnitude that the defendant's right to a fair trial was abridged." *United States v. Lewis*, 787 F.2d 1318, 1321 (9th Cir. 1986). "The standard for demonstrating the necessity for severance is high," such that the defendant urging the severance:

> . . . must show more than that a separate trial would have given him a better chance for acquittal. . . . He must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant. . . . In other words, the prejudice must have been of such magnitude that the defendant was denied a fair trial. . . . Clearly, this is not an easy burden to meet.

*United States v. Gee*, 695 F.2d 1165, 1169-70 (9th Cir. 1983) (quoting *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980) (internal citations omitted)). In this case, the substantive right at issue is the effective assistance of counsel. Therefore, the severance analysis merges into the Sixth Amendment analysis under *Cronic*.

On the morning of the second day of trial, when the Court inquired regarding the nature of relief Hester sought due to DeGabrielle's absence and the abrupt substitution of counsel, Kinchen stated:

> I know no one wants a continuance anywhere around here. I guess a re[newed] request for severance for Mr. Hester, but based upon the fact that he clearly has not had an adequate time to prepare for trial. I truly stepped into the facts on Friday. I did it just because of the concern that counsel was ineffective. That's candidly why I stepped in. That's my grounds.

*RT* [SEALED], Doc. No. 653-5 at 6. The government objected to the renewed severance request, arguing in part that "all the defendants should be tried together." *Id*. at 7.

The preservation of an individual defendant's right to a fair trial is necessarily more difficult in a conspiracy case with multiple co-Defendants. Depending on the circumstances, courts have found that a severance may be an appropriate alternative to a continuance in order to achieve efficiency without comprising a defendant's Sixth Amendment rights. *See, e.g., United States v. Wirsing*, 719 F.2d 859 (6th Cir. 1983) (holding that the district court abused its discretion in denying a severance, or in the alternative a continuance, in order to allow newly substituted counsel time to prepare for trial); *United States v. Ferguson*, 246 F.R.D. 107 (D. Conn. 2007) (considering propriety of a continuance, and in the alternative, a severance, based on unavailability of defendant's choice of counsel); *United States v. Ailsworth*, 873 F. Supp. 1450 (D. Kan. 1994) (denying continuance to preserve speedy trial rights of co-defendants, but granting defendant's motion for severance to allow newly appointed counsel additional time to prepare for trial).

In determining whether a trial must be postponed in order to preserve the defendant's right to effective assistance of counsel, the Supreme Court in *Cronic* approved the consideration of five non-exhaustive factors: "(1) [The] time afforded for investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel." *Cronic*, 466 U.S. at 652 (quoting *United States v. Cronic*, 675 F.2d 1126, 1129 (10th Cir. 1982)). The facts in *Cronic* are instructive. The defendant's case was complex, involving thirteen counts of mail fraud involving a check kiting scheme that the government had investigated for over four years. Thousands of documents had been reviewed by the government during that investigation. The defendant's lawyer, who had never tried a case before a jury and was principally a real estate lawyer, was given twenty-five days to prepare subsequent to his appointment, although he requested more. The trial took place over the course of four days. The defendant was convicted on eleven of the thirteen counts. Based on those facts, the Supreme Court concluded that "[t]his case is not one in which the surrounding circumstances make it unlikely that the

defendant could have received the effective assistance of counsel." *Id.* at 666.

Here, Hester was charged in fourteen counts, including a conspiracy which the government had been investigating for years through the use of wiretaps and confidential informants. Terabytes of discovery had been produced to defense counsel throughout the litigation, some of which Hester and DeGabrielle did not review.[10] DeGabrielle never appeared at trial. Although Norton continued to represent Hester throughout the litigation, Norton is principally a business and bankruptcy attorney. After taking over Hester's case, Kinchen advised the Court on the record that he had less than three days to prepare for trial. Hester contends that DeGabrielle failed to assist Kinchen with the transition.[11]

On the other side of the ledger, Kinchen is an experienced, well-respected criminal trial attorney. His law partner, Wynne, had been preparing to go to trial for months. Wynne had joined Kinchen's firm at least one month prior to trial, bringing with him the entire case file. *See* Doc. No. 329. Therefore, although Kinchen only had several days to get up to speed, Wynne was present and available to provide assistance. While the case was undoubtedly complex, the nature of the charges against Hester reduce "the significance of counsel's preparation time." *Id.* at 664. Twelve of the fourteen counts involved the falsification of records, each corresponding to a single $500 check solicited from a straw donor. As in *Cronic*, a large part of the government's case against Hester "consisted merely of establishing the transactions . . . . A competent attorney would have

---

[10] According to the conflict waiver signed by Hester and Azano, the parties acknowledged that Hester's "prior counsel (Mr. DeGabrielle) was unable to review discovery with SUSU because of SUSU's medical condition." Norton Decl., Ex. 1 ¶ 9.

[11] Hester's counsel represented during oral argument that Kinchen "had to come in to help Mr. DeGabrielle ███████████," and "[n]obody expected him not to show up on Tuesday [the first day of trial]." *RT* [SEALED] at 38. According to the terms of the conflict waiver signed by Azano and Hester, Hester not only elected to retain Kinchen, but also to terminate DeGabrielle as counsel. *See* Doc. No. 653-11 at 3. Therefore, while the Court finds counsel's statements credible regarding the expectation that DeGabrielle would appear in Court on the first day of trial, it is unclear what role Kinchen, Norton, and Hester expected DeGabrielle to play in Hester's defense going forward.

no reason to question the authenticity, accuracy, or relevance of this evidence – there could be no dispute that these transactions actually occurred." *Id.* Hester's defense was straightforward: raise a reasonable doubt as to his knowledge of individual transactions, as well as the illegal nature of the scheme. The testimony regarding the straw donations was similarly uncomplicated, and two of the key witnesses against Hester, Jason Wolter and Brian Duarte, did not testify until the second week of trial after a weekend recess in the proceedings.

With respect to the conspiracy count and the contribution and donations counts, counsel for Hester's co-Defendants pursued compatible defenses, and were available to assist Kinchen. Moreover, the testimony of the witnesses and the facts surrounding Hester's limited role in the charged conspiracy were not generally in dispute. The key "issue open to competent defense counsel on these facts" was whether Hester "acted with intent." *Id.* There was no direct evidence of intent with which to contend. *See* Doc. No. 375 at 5. Even with such limited time to prepare, any experienced criminal defense attorney – including Clarence Darrow – would have been able to muster a competent challenge to the government's circumstantial evidence of intent.

Having observed the relevant events as they transpired, the Court concludes after a careful review of the record that it properly exercised its discretion in denying Hester's renewed motion to sever. The surrounding circumstances were undoubtedly challenging, "but neither separately nor in combination do they provide a basis for concluding that competent counsel was not able to provide . . . the guiding hand that the Constitution guarantees." *Cronic*, 466 U.S. at 663. Accordingly, this is not a case in which prejudice may be presumed. Absent a presumption, Hester must "show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The second prong of Hester's claim is based on the prejudice which resulted from Kinchen's purportedly ineffective assistance during trial. Hester argues that Kinchen's representation was "hopelessly conflicted," SEALED Doc. No. 663 at 43, and the conflict

waiver prepared by Kinchen was inadequate. Hester also contends that, given the circumstances, Kinchen would have been unable to prepare a defense strategy. Hester speculates that Kinchen must have relied exclusively on the analysis and defense theories of co-counsel, depriving Hester of an independent defense.

Kinchen's representation throughout trial was not "so inadequate that it obviously" denied Hester's Sixth Amendment right to effective assistance of counsel. *United States v. Robinson*, 967 F.2d 287, 290 (9th Cir. 1992). With Kinchen's assistance, Hester was acquitted on six counts. The jury deadlocked on six other counts. However, Kinchen did make a series of professional decisions which may warrant further scrutiny. He accepted the representation of Hester less than three days prior to trial despite claiming to have no familiarity with the case. On the second day of trial, he represented to the Court that he needed more time to prepare, but did not request a continuance. Although he renewed Hester's motion to sever, Kinchen did not provide the Court with a sufficient legal basis upon which to grant the motion. Kinchen later failed to renew the severance motion after the close of evidence. *See United States v. Alvarez*, 358 F.3d 1194, 1206 (9th Cir. 2004) ("It is well-settled that the motion to sever must be renewed at the close of evidence or it is waived.").

This prong of Hester's ineffective assistance claim amounts to a challenge of Kinchen's tactical decisions, such that its resolution would require further development of the record. The Court cannot make conclusive findings regarding Kinchen's performance in this matter absent any insight into *why* Kinchen made the tactical and strategic decisions now viewed in hindsight as erroneous. *Laughlin*, 933 F.2d at 789. Neither party has offered any evidence regarding Kinchen's actions or strategy in this case. Kinchen "has had no opportunity to explain his actions." *Id*. As the Ninth Circuit noted in *Steele*, *supra*, the "interests of justice and judicial economy" would not "be served by delaying the trial proceedings to conduct an immediate hearing on an under-developed motion." 733 F.3d 894, 899 (9th Cir. 2013). The Court therefore declines to

consider the second prong of Hester's ineffective assistance claim prior to the entry of judgment in this case. The inquiry is better suited to determination on collateral review.

### **CONCLUSION**

For the reasons set forth above, the Court finds that Hester is not entitled to a presumption of prejudice under *Cronic*, and the record is insufficient for the Court to determine prejudice under *Strickland*. Accordingly, the Court **DENIES** Hester's motion for a new trial based on the ineffective assistance of counsel.

**IT IS SO ORDERED**.

DATE: June 26, 2017

HON. MICHAEL M. ANELLO
United States District Judge